## Com. ex rel. Albert v. Hard et al., County Commissioners.

*Election law—Primary election—Name on ballot—Party qualifications— Revocation of order to print name on ballot—Secretary of the Commonwealth —Jurisdiction of Court of Common Pleas of Dauphin County—Acts of July 12, 1913, and May 18, 1917—Mandamus.*

1. When the Secretary of the Commonwealth has forwarded to the county commissioners the list of the candidates of each party for the various offices as shown by the petition presented to him, and has also notified the candidates that their names have been so certified, he cannot thereafter pass upon the qualifications of the candidates or of the signers of the various petitions and certify to the commissioners that such candidates were not qualified to have their names printed on the ballots.

2. After the Secretary of the Commonwealth has certified the names for printing on the ballot, if any question arises as to the qualifications of the candidates, such questions must be determined under the Act of July 12, 1913, P. L. 719, as amended by the Act of May 18, 1917, P. L. 244, by the Court of Common Pleas of Dauphin County.

3. The original action of the Secretary of the Commonwealth is conclusive until it is set aside by the Dauphin County Court, and if the commissioners refuse to print the names on the ballot, the remedy of the party aggrieved is by mandamus.

4. In such case, if it is necessary that the relator shall receive the benefit of the decision in his favor by immediate action, the court will direct the mandamus to issue at once without the ordinary delay of twenty days.

Petition for writ of alternative mandamus, etc. C. P. Cumberland Co., May T., 1922, No. 439.

*Joseph P. McKeehan, Rippey T. Shearer* and *John J. Snyder,* for petitioner.
*C. S. Brinton* and *W. A. Kramer,* for respondents.

BIDDLE, P. J., April 29, 1922.—The relator in this case filed her petition for a writ of alternative mandamus on April 26, 1922, on which date a writ of alternative mandamus was awarded, service thereof being accepted by the respondents on the same day. The answer of the respondents was filed on April 27, 1922, and on April 28th a demurrer was filed by the relator, and the matter was heard in argument on said demurrer.

The essential facts, as they would appear under the pleadings, are that the relator, a resident of the 2nd Ward of the Borough of Carlisle, Pennsylvania, filed with the Secretary of the Commonwealth of this State on April 6, 1922, a petition to have her name placed on the primary ballot for the election to be held on May 16, 1922, for the office of State Committeeman of the Democratic Party from Cumberland County, Pennsylvania. This petition was received and accepted by the Secretary of the Commonwealth, who subsequently, in accordance with the provisions of the Uniform Primary Act of July 12, 1913, par. 9, P. L. 719, certified the name of the relator to the County Commissioners of Cumberland County to be printed on the primary ballot as a candidate of the Democratic Party for the said office of member of the State committee. On April 22, 1922, the clerk to the county commissioners, in response to a request from the Secretary of the Commonwealth, certified to the Secretary of the Commonwealth that the relator, Mary C. Albert, was not enrolled as a qualified elector of the Democratic Party, and on April 24, 1922, the Deputy Secretary of the Commonwealth certified to the county commissioners that it had been certified to the Secretary of the Commonwealth that the relator had not been enrolled as a member of the Democratic Party, and that, therefore, she was not qualified to have her name printed as a candidate of the said party for the office of State committeeman, and that her name should not be printed on the official ballot for the primary election to be held

2 D. & C.

May 16, 1922. Upon receipt of this second certificate, the relator was advised by the respondents that her name would not be printed upon the official ballot. In consequence of this notice, she applied for a writ of mandamus.

The question involved, as the court views it, is a narrow one, and does not at all involve the determination here of any question in regard to the qualifications of Mary C. Albert. That question, if it is to be determined at all, should be determined by the courts of Dauphin County and not by the court of Cumberland County. But the question for us to determine is whether any effect whatever can be given here to the certificate of April 22nd from the respondents and to the certificate of April 24, 1922, from the Secretary of the Commonwealth.

If there is any valid basis for these certificates, then this court would be without jurisdiction, and the remedy of the relator would be before the Court of Common Pleas of Dauphin County. On the other hand, if the Secretary of the Commonwealth was without authority to ask for the certificate of April 22nd from the county commissioners and to issue his certificate of April 24th, then those certificates should be disregarded. In that event, the case would have to be considered by the court as if the petition of the relator, filed April 6th, had been duly received by the Secretary of the Commonwealth, his certificate to the county commissioners properly received by them, and as if the relator had, without more, been notified by the commissioners that they intended to disregard the notification from the Secretary of the Commonwealth. If the matter stood in that position, we think that the relator would be within her right in applying to this court for a writ of mandamus to compel the county commissioners to have her name printed on the official ballot as a candidate for the office that she seeks, and that no other court would have jurisdiction of this question in the first instance.

After as careful a consideration of the matter as the very limited time has permitted, the court has reached the conclusion that nothing has been shown to justify or sustain the action of the Secretary of the Commonwealth in sending the certificate of April 24th to the county commissioners; that that certificate must be treated as a nullity, and the refusal of the county commissioners to print the name of the relator on the official ballot for the election to be held on May 16, 1922, as having no valid basis to support it. The learned and able counsel for the respondents were frank in stating that they could cite no decisions of the courts of this State in support of the position of the Secretary of the Commonwealth, and that they relied upon the provisions of the Act of July 12, 1913, P. L. 719, as amended by the Act of May 18, 1917, P. L. 244. In our opinion, this act does not sustain the position of the Secretary of the Commonwealth and of the respondents here. It is true that paragraph two of the amending Act of May 18, 1917, P. L. 244, provides, "That in no event shall any person's name be printed upon the official ballot of any party as a delegate, State committeeman, National committeeman or party officer unless he is a qualified elector of said party;" but, as the court views it, this section, without more, does not confer any judicial functions in the matter upon the Secretary of the Commonwealth or upon the county commissioners. Without this provision, a member of one party might seek any of the offices mentioned in connection with another party, just as for public offices it frequently happens that a member of the Republican Party may be nominated by the Democrats, or a member of the Democratic Party may be nominated by the Republicans, Prohibitionists or Socialists; and it was to provide against this that the clause in question appears in the section quoted. It merely notes a necessary qualification of such a candidate,

just as the Constitution provides an age qualification for members of Congress.

As we view the act as a whole, the only power that is not purely ministerial conferred upon the Secretary of the Commonwealth is to determine whether the *petitions* presented to him are in proper form and conform to the requirements of the act of assembly. The act does not give him the right to pass upon the qualifications of the petitioners who signed the petition, nor of the candidate in whose behalf the petition is signed. The Act of May 18, 1917, above quoted, requires that the candidate shall file with the petition an affidavit, stating, *inter alia*, that he has the necessary qualifications for the office that he seeks, and if this affidavit is attached and is in proper form, it is conclusive, so far as the Secretary of the Commonwealth is concerned.

In the pending case there is no allegation nor suggestion that the petition filed in behalf of the relator with the Secretary of the Commonwealth was defective in form, or that the requisite affidavit was not filed with the nomination petition.

When the Secretary of the Commonwealth had forwarded to the county commissioners the list of the candidates of each party for the various offices as shown in such petition, and had also notified the candidates that their names had been so certified, his functions in the matter were at an end; and while it may be that he would thereafter have the power to correct a mistake of his office in preparing the list so forwarded to the county commissioners, or in the notification to the candidate, he would have no right to attempt to pass upon the qualifications of the candidates or of the signers of the various petitions. It may well be that in the present case the relator was not properly enrolled in the office of the county commissioners as a member of the Democratic Party, and if that fact had been made to appear at the proper time and in the proper place, the printing of her name on the official ballots might be prevented. But the proper time was not on April 24, 1922, nor in the office of the Secretary of the Commonwealth or of the County Commissioners of Cumberland County. The Act of 1913, above mentioned, provides for the time and place where objections to nomination petitions or to the qualifications of those who are candidates for office shall be filed, and that is not in the Court of Common Pleas [of Cumberland County], but, in a case such as this, in the Court of Common Pleas of Dauphin County, and the objection should be filed within five days after the last day for the filing of the petitions.

It is, we think, manifestly the intention of the legislature that a candidate who insists that she possesses the proper legal qualifications, and who has filed a petition which is free from valid objection, shall not be deprived of her right to be a candidate for office without a day in court and without proper judicial determination of her rights. It is quite conceivable that if the qualifications of the relator had been attacked in the courts of Dauphin County, she could have shown that she was in fact duly qualified to be a candidate for the office that she seeks. Certainly, it would be inequitable to deny her this right without a hearing; and it is perfectly clear that if the action of the Secretary of the Commonwealth and of the county commissioners in the present case is sustained, it would be within the power of the Secretary of the Commonwealth to wipe out all nominations of the present sort without giving the parties concerned any legal remedy or redress whatever. All that would be necessary would be for the Secretary of the Commonwealth to send his supplementary certificate at the last day on which it would be possible to prepare lists for printing the official ballots and to have the ballots printed, and if the county commissioners accepted such certificates, the candidates

2 D. & C.

would be absolutely deprived of any chance of an effective remedy whatever. The mere statement of the condition that might ensue is sufficient, we think, to show the entire lack of a valid basis for the attitude of the Secretary of the Commonwealth and of the county commissioners.

Under the view that the court takes of this case, judgment must be entered for the relator on the demurrer, and as, in order that the relator may receive the benefit of this decision, it is necessary that immediate action should be taken by the county commissioners, the ordinary delay of twenty days for the issuance of the peremptory mandamus cannot be permitted, but such mandamus must be issued at once.

And now, April 29, 1922, after due hearing and consideration, judgment is given for the relator on the demurrer, together with the costs of the case, to be paid by the respondents; and the court further awards that a writ of peremptory mandamus shall issue at once in her behalf, commanding the respondents to have the name of the relator printed upon the official primary ballot as a candidate for the office of State Committeeman of the Democratic Party.

From J. W. Wetzel, Carlisle, Pa.